**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SUNIL RAYAMAJHI,<br>*Petitioner*, | No. 16-70534 |
| v. | Agency No.<br>A099-912-460 |
| MATTHEW G. WHITAKER, Acting<br>Attorney General,<br>*Respondent.* | OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 15, 2018
San Francisco, California

Filed January 15, 2019

Before: Susan P. Graber, Stephanie Dawn Thacker,* and Mark J. Bennett, Circuit Judges.

Opinion by Judge Graber;
Concurrence by Judge Bennett

---

* The Honorable Stephanie Dawn Thacker, Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation.

## SUMMARY[**]

### Immigration

The panel dismissed in part and denied in part a petition for review of Board of Immigration Appeals' denial of asylum and withholding of removal to a citizen of Nepal under the material support terrorist bar.

The panel held that petitioner's argument for a duress exception to the material support bar is foreclosed by *Annachamy v. Holder*, 733 F.3d 254 (9th Cir. 2013), *overruled in part on other grounds by Abdisalan v. Holder*, 774 F.3d 517 (9th Cir. 2015) (en banc), and therefore does not constitute a colorable legal or constitutional question providing jurisdiction over the otherwise unreviewable material support determination.

The panel held that there is no de minimis funds exception to the material support bar. The panel explained that the plain text of the statute, 8 U.S.C. § 1182(a)(3)(B)(iv)(VI), states that funds knowingly given to a terrorist organization are material support, regardless of the amount given. The panel further held that even if the statute is ambiguous on this point, the Board's interpretation in *In re A-C-M-*, 27 I. & N. Dec. 303 (B.I.A. 2018), that there is no de minimis exception, was based on a permissible construction of the statute, and therefore is entitled to *Chevron* deference.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that because petitioner admitted that he gave about $50 to someone whom he knew was a member of the Maoists, a designated terrorist organization at that time, substantial evidence supported the Board's determination that he gave material support to a terrorist organization, rendering him ineligible for asylum and withholding of removal.

Concurring in part and concurring in the judgment, Judge Bennett disagreed with the majority that the plain text of the statute unambiguously excludes de minimis funds from the definition of material support, but agreed with the majority that the Board's interpretation of the statute in *In re A-C-M-* was permissible, and therefore entitled to *Chevron* deference.

## COUNSEL

George T. Heridis (argued), Law Offices of Gill & Heridis, San Jose, California, for Petitioner-Appellant.

Daniel I. Smulow (argued), Senior Counsel for National Security; Christopher C. Fuller, Deputy Chief, National Security Unit; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent-Appellee.

**OPINION**

GRABER, Circuit Judge:

Petitioner Sunil Rayamajhi fled Nepal in 2009 because a terrorist organization tortured and threatened him repeatedly. Before fleeing, Petitioner knowingly gave money to a member of the terrorist organization at least once. After arriving in the United States, Petitioner sought asylum, statutory withholding of removal, withholding of removal under the Convention Against Torture ("CAT"), and deferral of removal under CAT.

An immigration judge ("IJ") granted Petitioner deferral of removal under CAT, but denied him asylum and both forms of withholding of removal. The IJ found Petitioner ineligible for asylum and withholding of removal because Petitioner provided "material support" to a terrorist organization, as defined in 8 U.S.C. § 1182(a)(3)(B)(iv)(VI). The Board of Immigration Appeals ("BIA") affirmed the denials of asylum and withholding of removal and left undisturbed the grant of deferral of removal. Petitioner seeks review of the BIA's decision. We have jurisdiction under 8 U.S.C. § 1252(a). We deny the petition in part and dismiss it in part.

Petitioner is a Nepali citizen. In 2003, he took an administrative position with Doctors Without Borders, an international nongovernmental organization. During the early stages of his work for Doctors Without Borders, Petitioner became a target of a Nepali terrorist organization called the Maoists. The Secretary of State designated the Maoists as a "terrorist organization" under 8 U.S.C. § 1182(a)(3)(B)(vi)(II) in 2004, but revoked that designation in 2012. 77 Fed. Reg. 54,944-02, 54,944 (Sept. 6, 2012).

From 2004 to 2008, Maoists beat Petitioner twice, demanded that he give them money and join their political party, and threatened him and his family. In February 2009, a Maoist approached Petitioner at a taxi stand and demanded money. Petitioner recognized the Maoist as one of the men who had beaten him in the past. Fearing what the Maoist might do to him if he did not comply, Petitioner gave the man the equivalent of about $50.[1] Petitioner left Nepal soon after that incident.

Petitioner entered the United States in June 2009 on a visitor's visa. He applied for asylum and withholding of removal in December 2009. An IJ found that, even considering only the 2009 "donation," Petitioner gave material support to the Maoists in the form of money. Thus, the IJ ruled that the Immigration and Nationality Act's ("INA") "material support bar" rendered Petitioner ineligible for asylum and withholding of removal. The IJ also held that she lacked jurisdiction to grant an exception on the ground of duress. The IJ ordered Petitioner removed to Nepal, but deferred his removal under CAT because he likely would suffer torture if sent back to Nepal. The material support bar does not apply to deferral of removal under CAT. 8 C.F.R. § 1208.17(a). Petitioner appealed the denial of asylum and withholding of removal, and the government appealed the grant of deferral of removal.

On appeal, the BIA rejected Petitioner's argument that the material support bar did not apply to him, holding: "There is

---

[1] The parties dispute whether Petitioner also knowingly gave money to Maoists in 2004 and 2005 when they demanded money from him. We need not resolve that dispute because, as explained in text, the unchallenged event in 2009 is disqualifying.

no de minimis exception to the material support bar" and "no duress exception to the material support bar." The BIA also concluded that the IJ had not properly considered the country condition evidence in the record as it pertained to CAT deferral. Accordingly, the BIA remanded the case to the IJ solely for further consideration of Petitioner's claim for CAT deferral. On remand, the IJ incorporated the facts and procedural history of her prior decision and the BIA's prior decision. She again granted Petitioner CAT deferral.

Petitioner again appealed to the BIA and contested the IJ's denials of asylum and withholding of removal under the material support bar. In 2016, the BIA issued its second decision, reaffirming its dismissal of Petitioner's asylum and withholding claims. The government did not appeal the IJ's second grant of CAT deferral, so that portion of the ruling remains in effect.

Petitioner timely seeks our review. He argues that the BIA and the IJ erred by denying him asylum and withholding of removal under the material support bar, because he gave money to the Maoists under duress and gave only de minimis support. We review only the BIA's opinion, except to the extent that it expressly adopted portions of the IJ's decision. *Doe v. Holder*, 736 F.3d 871, 877 (9th Cir. 2013). We review the BIA's fact-finding for substantial evidence and may grant a petition only if the evidence compels a conclusion contrary to the BIA's conclusion. *Id.* We review de novo the BIA's determination of purely legal questions, but defer to the BIA's legal interpretation of the INA unless that interpretation contradicts the statute's plain meaning. *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004) (citing *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)).

## A. *Duress*

In *Annachamy v. Holder*, 733 F.3d 254, 267 (9th Cir. 2013), *overruled in part on other grounds by Abdisalan v. Holder*, 774 F.3d 517, 526 (9th Cir. 2015) (en banc), we held that "the material support bar does not include an implied exception for individuals" who give support to a terrorist organization while "under duress." *Annachamy* forecloses Petitioner's argument that a "duress" exception to the material support bar applies here.

Because Petitioner's duress argument is not colorable in view of our precedent, we lack jurisdiction to consider it. Under 8 U.S.C. § 1158(b)(2)(D), we lack jurisdiction to consider a petition for review of the BIA's denial of asylum and withholding of removal pursuant to the material support bar. Under 8 U.S.C. § 1252(a)(2)(D), however, we retain jurisdiction (despite the BIA's applying the material support bar) only over "colorable constitutional claims or questions of law." *Bazua-Cota v. Gonzales*, 466 F.3d 747, 748 (9th Cir. 2006) (per curiam). Accordingly, we dismiss the petition in part.

## B. *De Minimis Support*

A noncitizen who has engaged in "terrorist activity" cannot obtain asylum or withholding of removal. *See* 8 U.S.C. § 1182(a)(3)(B)(i)(I) (stating that an alien who has engaged in "terrorist activity" is inadmissible); *id.* § 1158(b)(2)(A)(v) (stating that an alien described in § 1182(a)(3)(B)(i)(I) is ineligible for asylum); *id.* § 1227(a)(4)(B) (stating that any alien described in § 1182(a)(3)(B) is removable); *id.* § 1231(b)(3)(B)(iv) (stating that an alien described in § 1227(a)(4)(B) is ineligible

for withholding of removal).  As relevant here, "engage in terrorist activity" means "to commit an act that the actor knows, or reasonably should know, affords material support, including a safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training," to a terrorist organization or a member of a terrorist organization, unless the alien did not know (and should not reasonably have known) that the organization was a terrorist organization.  *Id.* § 1182(a)(3)(B)(iv)(VI).

In its decisions on Petitioner's claims, the BIA held that no de minimis exception to the material support bar exists.  In a published opinion issued several years later, the BIA held the same:  "[A]n alien provides 'material support' to a terrorist organization, regardless of whether [the act] was intended to aid the organization, if the act has a logical and reasonably foreseeable tendency to promote, sustain, or maintain the organization, *even if only to a de minimis degree*."  *In re A-C-M-*, 27 I. & N. Dec. 303, 308 (B.I.A. 2018) (emphasis added)); *see also id.* at 307 ("In sum, 'material support' is a term of art" that refers to "aid of a material and normally tangible nature, and it is not quantitative." (footnote omitted)).  Whether or not we afford *Chevron* deference to the BIA's interpretation, we agree that the material support bar does not contain an exception for people who give merely de minimis funds to a terrorist organization.

If a statute is unambiguous, we end our analysis by enforcing its text.  *Chevron*, 467 U.S. at 843.  In relevant part, § 1182(a)(3)(B)(iv)(VI) defines engaging in terrorist activity as giving something that "affords *material support*, *including*

a safe house, transportation, communications, *funds*, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training," to a terrorist organization. (Emphases added.) The statute provides a list of things that constitute "material support." "Funds" fall under this category, and the statute does not establish any numerical threshold for money to qualify as material support. The inclusion in the list of the phrase "other material financial benefit" does not assist Petitioner. Grammatically, that phrase relates only to "transfer of funds" and suggests that "funds" are material per se, because a person affords material support by transferring funds *or* some "*other* material financial benefit." Under the plain text of § 1182(a)(3)(B)(iv)(VI), "funds" knowingly given to a terrorist organization are "material support,"[2] regardless of the amount given.

If § 1182(a)(3)(B)(iv)(VI) is ambiguous as to whether it contains an exception for de minimis funds, the BIA's interpretation merits *Chevron* deference even though it post-dates the BIA's decision on Petitioner's claims. *Pauley v. U.S. Dep't of Agric.*, 348 F.3d 1143, 1152 (9th Cir. 2003) (per curiam); *see also Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 744 n.3 (1996) ("Where, however, a court is addressing transactions that occurred at a time when there was no clear agency guidance, it would be absurd to ignore the agency's current authoritative pronouncement of what the statute

---

[2] As noted, an exception applies when the person affording support did not know, and should not reasonably have known, that he was dealing with a terrorist organization. § 1182(a)(3)(B)(iv)(VI). That exception does not apply here because Petitioner testified that he knew that the man to whom he gave money in 2009 was a Maoist.

means."). The BIA's determination that no de minimis exception exists "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. The BIA found "no legislative history to support taking a quantitative approach" to defining "material support." *In re A-C-M-*, 27 I. & N. Dec. at 307. Moreover, the BIA noted that it would not make sense for § 1182(a)(3)(B)(iv)(VI) itself to contain a de minimis exception because, in § 1182(d)(3)(B)(i), Congress gave the Secretary of Homeland Security the discretionary authority to grant waivers to the material support bar "to address excusable violations including, among other things, support provided under duress or to only a de minimis degree." *Id.* at 308. That grant of discretion would be meaningless if the material support bar did not apply in the first place.

We hold that the INA's material support bar contains no implied exception for de minimis aid in the form of funds. Petitioner admitted that, in 2009, he gave about $50 to someone whom he knew was a Maoist. Thus, substantial evidence supports the IJ's finding, adopted by the BIA, that Petitioner gave material support to a terrorist organization, rendering him ineligible for asylum and withholding of removal.

**DISMISSED in part and DENIED in part.**

BENNETT, Circuit Judge, concurring in part and concurring in the judgment:

I fully agree with the majority's discussion of the duress issue.

I also agree that the petition should be denied as to the material support issue. The agency's interpretation of the material support bar is permissible, and so we must defer to it under *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984), even if, de novo, we might interpret the statute in a different way. But my colleagues also conclude that, under the plain text of the statute, "material support" encompasses de minimis support. Maj. Op. at 8–9. I respectfully disagree, as Congress has not "directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842.

The material support bar provides that an alien is deemed to "engage in terrorist activity" if he commits an act that he knows, or reasonably should know,

> affords material support, including a safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training

to a terrorist. 8 U.S.C. § 1182(a)(3)(B)(iv)(VI). The question here is whether the statute unambiguously defines de minimis "funds" as "material support."

I begin with a proposition that the majority does not dispute: the word "material," when modifying "support," is patently ambiguous.[1]   "Material" has several definitions, ranging from "more or less necessary" to "important" to merely "having influence or effect."  Black's Law Dictionary 976 (6th ed. 1990).[2]  Not all of these definitions support the agency's interpretation that material support encompasses *any* act that "has a logical and reasonably foreseeable tendency to promote, sustain, or maintain the [terrorist] organization, even if only to a de minimis degree."  *In re A-C-M-*, 27 I. & N. Dec. 303, 308 (B.I.A. 2018).

I am unable to resolve the ambiguity by consulting various judicial interpretations of "material."  The meaning of "material" depends on the context in which it is used.  *See Jabateh v. Lynch*, 845 F.3d 332, 344–45 (7th Cir. 2017) (Hamilton, J., concurring in part and concurring in the judgment).  For the crime of making fraudulent statements to immigration officials, "material" means "has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed."  *Kungys v. United States*, 485 U.S. 759, 770 (1988) (internal quotation marks omitted) (reviewing historical examples and adopting the "most common

---

[1] As discussed below, the word "material" is used twice in the statute. I find "material" unambiguously quantitative when used the second time—as an adjective modifying "financial benefit."

[2] The first iteration of the material support bar was enacted in the Immigration Act of 1990, Pub. L. No. 101-649, § 601(a), 104 Stat. 4978, 5067–70.  The varying definitions of "material" have not meaningfully changed since then.  *See* Black's Law Dictionary 1124 (10th ed. 2014) (defining "material" as, inter alia, "[h]aving some logical connection with the consequential facts," "significant," "essential").

formulation" of the materiality standard in the context of concealment or misrepresentation).  In the False Claims Act context, however, the Supreme Court has rejected the view "that any statutory, regulatory, or contractual violation is material so long as the defendant knows that the Government would be entitled to refuse payment were it aware of the violation."  *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2004 (2016).  Unlike in *A-C-M-*, the "materiality standard is demanding" in the False Claims Act context and does not encompass "minor or insubstantial" noncompliance with a condition of payment in a government contract.  *Id.* at 2003.

There are many other interpretations of "material," but none of them changes the fact that the word is ambiguous in most contexts.  *See, e.g.*, Fed. R. Evid. 401 advisory committee's note (explaining that the rule "has the advantage of avoiding the loosely used and ambiguous word 'material'").  It is not surprising, then, that the only other circuit to consider the issue concluded that the term "material support" is ambiguous with respect to the question of de minimis support.  *See Ayvaz v. Holder*, 564 F. App'x 625, 628 (2d Cir. 2014) (unpublished) ("Because the term 'material' is ambiguous and the BIA did not address whether the single meal Ayvaz provided qualified as material support, remand is appropriate for further clarification in a precedential decision.").

This case involves support in the form of funds.  The majority reasons that Congress rendered the term "material support" unambiguous in the context of funds.  Maj. Op. at 9. In particular, the majority relies on the clause "including . . . funds" in section 1182(a)(3)(B)(iv)(VI) to conclude that

"material support" unambiguously includes *any* funds, regardless of amount. Maj. Op. at 9.

I respectfully disagree. In general, terms that follow the word "including" are illustrative, not definitional. *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 99–100 (1941). Here, the term "funds" is intended to be illustrative of "material support." When interpreting a statute, we should not prioritize the meaning of illustrative terms over the meaning of the illustrated term. *See Chickasaw Nation v. United States*, 534 U.S. 84, 89–91 (2001); *United States v. Collins*, 854 F.3d 1324, 1333 (11th Cir.), *cert. denied*, 138 S. Ct. 503 (2017).

Thus, when a list of terms follows the word "including," not every conceivable definition of every term in that list necessarily falls within the purview of the statute. *See Chickasaw Nation*, 534 U.S. at 89–91; *Collins*, 854 F.3d at 1333. When, for example, it appears that Congress inadvertently included an illustrative term that conflicts with the plain meaning of the term it is intended to illustrate, courts should disregard the illustrative term as "simply a bad example." *Chickasaw Nation*, 534 U.S. at 90. So too, when a statute uses an illustrative term that is overly broad, courts should adopt a narrowing construction of that illustrative term so that it fits the meaning of the term it illustrates. *See, e.g.*, *Collins*, 854 F.3d at 1333 (construing 18 U.S.C. § 3663A(c)(1)(A)(ii) such that the illustrative phrase "including any offense committed by fraud or deceit" refers only to an "offense against property"). Therefore, were "material" given a quantitative interpretation, funds would mean not any and all amounts of money, but instead a non-de minimis amount of money.

I agree that Congress might have used the phrase "including . . . funds" to define "material support" as encompassing any funds, however small the amount. That construction fits with one permissible interpretation of "material." And, indeed, given the devastating worldwide harms inflicted by terrorists, such a decision by Congress would be understandable. But Congress did not *unambiguously* define "material" in that way.[3] Another permissible interpretation of "material" is "more than de minimis." Under that interpretation, the statute's illustrative use of the term "funds" should not be construed to encompass de minimis funds. If the agency can permissibly interpret "material" to mean "more than de minimis," as surely it can, then it can also permissibly interpret "funds" to fit that interpretation.

The ambiguity is made starker by Congress's use of the illustrative phrase "transfer of funds or other material financial benefit." 8 U.S.C. § 1182(a)(3)(B)(iv)(VI). On the one hand, this phrase suggests that funds per se constitute a "material financial benefit," as the majority points out. Maj. Op. at 8–9. On the other hand, under the majority's interpretation, the word "material" as used this second time is entirely superfluous, as under the majority's interpretation, *any* financial benefit is necessarily material. If Congress did not intend "material" to be superfluous when used this second time, then "material" cannot be read as anything other than a

---

[3] If the statute read "material support, including . . . *any* funds," then I would agree that it is unambiguous as to the issue of de minimis support. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997). Congress has included such language in other statutes, but not here. *See, e.g.*, 18 U.S.C. § 2339A(b) (defining "material support or resources" to mean "any property, tangible or intangible, or service . . .").

quantitative term that excludes from its reach the transfer of de minimis (i.e., *non*-material) financial benefits.  What else could "material financial benefit" mean, if the word "material" is to be ascribed any meaning at all?  *See Jabateh*, 845 F.3d at 345 (Hamilton, J., concurring in part and concurring in the judgment) ("While the precise meaning of 'material' depends on its context, it *always* has the effect of raising the threshold of the word it modifies.").  And if "material" means "more than de minimis" the second time it is used, as I believe it must, we would ordinarily presume it has the same meaning elsewhere in the same statute– particularly elsewhere in the same subsection (indeed the same sentence).  *See Dep't of Revenue v. ACF Industries, Inc.*, 510 U.S. 332, 341–42 (1994).

Although I concur in the judgment here, the majority's reasoning will have consequences that extend beyond this case.  In light of today's decision, the agency will be unable to adopt a different permissible interpretation of the material support bar in the context of de minimis funds in the future.  *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).  We should not prevent the agency from continuing to consider the meaning of an ambiguous, context-specific term based on its expertise and experience in this area.[4]  *See id.* at 1002–03.

---

[4] Before its precedential decision in *A-C-M-*, the BIA concluded in a reasoned unpublished decision that "one packed lunch and the equivalent of about $4 U.S. dollars, which the terrorists expressly stated would be used to buy beer . . . cannot be said to be material."  *In re \*\*\**, 2009 WL 9133770, at \*2 (B.I.A. 2009); *see also In re S-K-*, 23 I. & N. Dec. 936, 945 (B.I.A. 2006) (declining to address the respondent's claim that material support does not include de minimis support, but recognizing that such a claim was "by no means frivolous").

Because I believe Congress did not speak directly to the question whether "material support" encompasses de minimis funds, I cannot join in the majority's application of *Chevron* step one.  Otherwise, I concur.